**Affirmed as Modified and Opinion filed October 24, 2017.**



In The

# Fourteenth Court of Appeals

---

## NO. 14-15-00913-CV

---

## HOWARD REGINALD WILLIS, Appellant

### V.

## LOLA E. WILLIS, Appellee

---

**On Appeal from the 246th District Court
Harris County, Texas
Trial Court Cause No. 2014-64029**

---

## O P I N I O N

An ex-husband appeals from a final divorce decree arguing (1) the trial court abused its discretion in dividing the community estate and (2) the evidence conclusively established that spousal maintenance should not be awarded to his ex-wife. We modify the decree to delete the spousal-maintenance award and affirm the decree as modified.

# I.    FACTUAL AND PROCEDURAL BACKGROUND

Appellant/respondent Howard Reginald Willis and appellee/petitioner Lola E. Willis, married in April 1995, are the parents of three children — two sons, born in 2001 and 2002, and a daughter, born in 2005.

The parties' two sons, now teenagers, both suffer from autism and receive Supplemental Security Income ("SSI") from the Social Security Administration. Howard and Lola stipulated that these sons are special-needs children. Lola has been the primary caretaker of all three children for the whole of their lives. She takes the children to receive medical care, and attends to their other needs on a regular basis. Lola relies upon and receives help from her family in caring for the children.

Lola suffers from end-stage renal disease as well as other medical ailments. She has been hospitalized because of her kidney and liver problems. On dialysis for about two-and-a-half years, Lola goes for dialysis treatments three times a week. Lola receives SSI from the Social Security Administration for her physical disability.

At the time of trial, Lola and the children resided in Lola's mother's home. Lola and Howard stipulated that Lola cannot afford the costs of this lawsuit.

Lola and Howard stopped living together as husband and wife in January 2009, more than five years before this divorce proceeding commenced. In October 2014, Lola filed a petition for divorce, and Howard filed a counter-petition. The trial court conducted a bench trial. Howard and Lola were the only witnesses to testify.

After the trial court signed a final divorce decree, Howard timely filed a motion for new trial. While the trial court still had plenary power over the decree,

the trial court signed a different final divorce decree, from which Howard timely perfected an appeal. The trial court later filed findings of fact and conclusions of law.

## II. ISSUES AND ANALYSIS

In his first issue, Howard asserts that this court has appellate jurisdiction over this case because the trial court signed the final divorce decree while it still had plenary power and because Howard timely perfected this appeal. Howard timely filed a motion for new trial on July 24, 2015. The trial court signed a final divorce decree on September 16, 2015, while it still had plenary power to vacate, modify, correct, or reform its prior decree. *See* Tex. R. Civ. P. 329b. Howard timely perfected this appeal. Thus, we have jurisdiction over this appeal. Though we agree with the assertions in Howard's first issue, Howard does not assert in that issue that the trial court erred in any way.

In Howard's second issue, he asserts that the trial court erred in dividing the community estate. In Howard's third issue he challenges the trial court's order that he pay Lola $972 each month in spousal maintenance. In Howard's fourth issue, he asserts that, if this court does not sustain his second or third issue, we should conclude that Lola is not entitled to both spousal maintenance and the $60,000 judgment contained in the divorce decree because Lola asked that the trial court to grant one or the other, not both.

## A. Did the trial court abuse its discretion in dividing the community estate?

In Howard's second issue, he challenges the fairness of the trial court's division of the community estate, claiming it is unfair to him because he received less than twelve percent of the community estate despite there being no evidence of any bad behavior by Howard sufficient to warrant such a disproportionate division.

3

## 1. *Standard of Review*

When dividing property between two divorcing spouses, the trial court is required to "order a division of the estate of the parties in a manner that the court deems just and right, having due regard for the rights of each party and any children of the marriage." Tex. Fam. Code Ann. § 7.001 (West, Westlaw through 2017 1st C.S.); *Murff v. Murff*, 615 S.W.2d 696, 698 (Tex. 1981). We will not disturb the property division on appeal unless the appellant demonstrates that the trial court clearly abused its discretion by a division or an order that is manifestly unjust and unfair. *See Hedtke v. Hedtke*, 248 S.W. 21, 23 (Tex. 1923); *Chavez v. Chavez*, No. 14-14-00481-CV, 2016 WL 1613240, at *5 (Tex. App.—Houston [14th Dist.] Apr. 21, 2016, no pet.). In reviewing the trial court's property division, we must consider (1) whether the trial court had sufficient information upon which to exercise its discretion and (2) whether the trial court abused its discretion by dividing the property in a manner that is manifestly unjust and unfair. *See Chavez*, 2016 WL 1613240, at *5. We are to resolve every reasonable presumption in favor of a proper exercise of discretion of the trial court in dividing the parties' property. *Id*. Under this abuse-of-discretion standard, the legal sufficiency of the evidence is not an independent ground of error, but is merely a relevant factor in assessing whether the trial court abused its discretion. *Stavinoha v. Stavinoha*, 126 S.W.3d 604, 608 (Tex. App.—Houston [14th Dist.] 2004, no pet.).

In *Murff*, the Supreme Court of Texas identified various factors that the trial court may consider when dividing the community estate. *See Murff*, 615 S.W.2d at 698–99; *Chavez*, 2016 WL 1613240, at *5. These factors include the nature of the community property, the relative earning capacity and business experience of the spouses, their relative financial condition and obligations, their education, the size

4

of the separate estates, the age, health, and physical condition of the parties, fault in breaking up the marriage, and the benefit the spouse not at fault would have received had the marriage continued. *See Murff*, 615 S.W.2d at 698–99; *Chavez*, 2016 WL 1613240, at *5.

## 2. *The Trial Court's Division of the Community Estate*

Howard testified that he has worked for the City of La Porte for 27 years as a Production Operator. Howard holds a retirement account with the City of La Porte. The trial evidence showed that the community-property portion of this retirement account has a value of between $135,000 to $144,000. At trial Howard testified to a previously undisclosed deferred-compensation account worth $2,000 to $3,000.

Evidence at trial, including Howard's Inventory and Appraisement, showed that the community property at 249 De Haven Street had a value of $37,225.[1] Evidence at trial, including Howard's testimony, showed that the community property (including the land and the mobile home) at 3101 Masterson Street had a value of $10,277. Lola submitted evidence that Howard had purchased the community property at 301 Massachusetts Street for $5,000. Initially Howard testified that he had paid $3,500 for this property, and then later Howard testified that the actual purchase price was $4,500. Evidence at trial, including Howard's testimony, showed that the community property at 262 North Carolina Street had a value of $10,061. Though the trial evidence indicated that neither Howard nor Lola hold record title to the property at 241 De Haven Street, Howard listed this property as community property with a value of $34,834 in his Inventory and

---

[1] This case involves property located at three different addresses on De Haven Street. The other two properties are mentioned below.

5

Appraisement, which is part of the trial evidence.[2]   Though the trial evidence indicated that neither party holds record title to the property at 213 De Haven Street, Howard listed this property as community property with a value of $30,000 in his Inventory and Appraisement.  Other trial evidence showed that the property at 213 De Haven Street had a value of $33,118.

### Property Awarded to Howard

In its divorce decree, the trial court awarded Howard all of the property at 249 De Haven Street, 3101 Masterson Street, 301 Massachusetts Street, and 262 North Carolina Street.  The trial court also awarded Howard any interest or liability he may have in the properties at 241 De Haven Street and 213 De Haven Street. The trial court also awarded Howard funds having an aggregate value of $50,700 on deposit in various financial institutions.

### Property Awarded to Lola

In the final divorce decree, the trial court awarded Lola funds having a value of $100 on deposit in a financial institution.  The trial court also awarded Lola the entire community-property portion of Howard's retirement account with the City of La Porte and his deferred-compensation account.[3]  As part of the division of the community estate, the trial court also awarded Lola a judgment of $60,000 payable at the rate of $1,000 each month and secured by the real estate owned by Howard.

### Unequal Division of the Community Estate

Though the trial court did not state that it sought to achieve specific percentages in the division of the community estate, counting the property at 241

---

[2] Other trial evidence shows that this property had the same value.

[3] The trial court awarded Howard the parts of these accounts earned before the date of marriage or after the date of divorce.  This property is Howard's separate property and so is not part of the division of community estate.

De Haven Street and 213 De Haven Street as community property, and including the $60,000 judgment in the calculation, the trial court awarded Lola 53% to 56% of the community estate and awarded Howard 44% to 47% of the community estate, based on the range of values supported by sufficient evidence. Howard asserts that the trial evidence is insufficient to justify the trial court's unequal division of the community estate.

### 3. The Trial Court's Treatment of 241 De Haven as Community Property

Howard appears to complain that the trial court treated 241 De Haven as community property, even though the real property records show that Howard's adult son Desmond[4] holds title to this property. At trial Howard testified as follows:

- Howard bought the property at 241 De Haven during his marriage to Lola.

- In September 2009, after Howard and Lola separated, Howard signed a deed conveying title to the property to the girlfriend of his adult son Desmond. Howard said he intended to gift this property to Desmond, but did not want Desmond to have record title because his son "had some stuff on his credit."

- After Desmond broke up with his girlfriend, she conveyed the property at 241 De Haven to Desmond.

- Howard paid 2013 and 2014 property taxes on 241 De Haven when record title for the property was in Desmond's name.

Howard listed the property at 241 De Haven Street as community property in his Inventory and Appraisement, which is part of the trial evidence. Howard signed this document and stated under oath in the document that, to the best of his knowledge and belief, the Inventory and Appraisement contained a full list of all properties that Howard claims belong to the community estate. On this record, we conclude that the trial court did not err in treating 241 De Haven as community

---

[4] Lola is not Desmond's mother.

property.  *See In re C.E.W.*, No. 05-14-00459-CV, 2015 WL 5099336, at *3 (Tex. App.—Dallas Aug. 31, 2015, pet. denied) (mem. op.).

### 4. The Value of Howard's Retirement Account

In his Inventory and Appraisement, which is part of the trial evidence, Howard asserted that the value of the community interest in his retirement account with the City of La Porte was $134,898.67.  At trial, Howard testified that he had a larger amount — $144,000 — in his retirement account.  In its findings of fact and conclusions of law, the trial court treated the community property portion of this retirement account as having a value of "between approximately $135,000 to $144,000."

*Howard's Post-Trial Motion in Which he Asserted Newly Discovered Evidence*

In his motion for new trial, Howard submitted an affidavit in which he stated that after trial in this case, he discovered new evidence showing that the value of the community interest in Howard's retirement account with the City of La Porte actually was $404,696.01 rather than $134,898.67.  Howard asked the trial court to grant a new trial based on this new evidence, asserting that his failure to discover the evidence sooner was not for want of due diligence.  Howard's motion for new trial was denied, and Howard has not assigned error or briefed any argument on appeal challenging that ruling.  Nonetheless, Howard asserts that in reviewing the trial court's division of the community estate, this court may value the community-property portion of Howard's retirement account at $404,000 — the value allegedly reflected by the new evidence — because, according to Howard, the trial court stated during the hearing on Howard's motion for new trial that the court was aware that the actual value of the community-property part of Howard's retirement account was $404,000.

8

During the motion-for-new-trial hearing, counsel for Howard, who was quoting from a letter that was admitted into evidence at trial, stated that Howard's retirement plan was a hybrid or cash balance plan with features of both a defined contribution and defined benefit plan. Howard's counsel stated that she did not know if the trial court took that into account. The trial court responded "[t]he Court did." But, taking this fact into account, by itself, does not mean that the trial court knew that the value of the community-property part of the retirement account was $404,000.

Howard's counsel then stated that if the court took that into account, then the court knows that the City of La Porte is going to match Howard's contributions on a two-to-one basis so that the value of Howard's retirement account was $404,000. The trial court responded "I understand that. I knew that." The reporter's record does not contain any further statements by the trial court on this point or any explanation of what the trial court meant by these statements in the context of this discourse. It is not clear what the trial court intended to convey by these terse statements. It is possible that the trial court meant to say that it understood the nature of the new evidence presented in Howard's motion for new trial to show that the community-property part of his retirement account was worth $404,000.

It would not be reasonable to conclude that the trial court was aware that the community-property part of Howard's retirement account was worth $404,000 at the time of the court's prior ruling that it was awarding the entire community-property portion of the account to Lola. No evidence presented at trial showed that the community-property portion of the account had a value greater than $144,000, and no party argued for a higher value before the trial court divided the community estate.

Though the trial court rendered its second final divorce decree after the

9

motion-for-new-trial hearing, in this decree the trial court recited that it had denied Howard's motion for new trial. Howard has not challenged the denial of his motion for new trial. One of the bases on which the trial court could have denied this motion as to the newly discovered evidence is on the ground that Howard did not show that his failure to discover the evidence sooner was not due to a lack of diligence. *See Zhao v. Hudgens Group, Inc.*, No. 14-10-00081-CV, 2011 WL 2347709, at \*10 (Tex. App.—Houston [14th Dist.] June 7, 2011, no pet.) (mem. op.). In addition, in its lengthy findings of fact and conclusions of law, signed after the motion-for-new-trial hearing, the trial court showed that it based its decree on the trial evidence of a value of between $135,000 and $144,000 for the community-property part of the retirement account, rather than on any knowledge or evidence that the value was $404,000.

On this record, we conclude that the trial court did not divide the community estate based on a value of $404,000 for the community-property part of the retirement account, and it would not be proper for us to use this value for the community-property portion of the retirement account in determining whether the trial court abused its discretion in dividing the community estate.

**5.** ***The Trial Court's Alleged Error in Basing the Disproportionate Division of Community Estate on Certain Findings***

Howard asserts that the trial court abused its discretion in its disproportionate division of the community estate because:

> (1) Lola requested a disproportionate division of the community estate based in part on the substantial care and personal supervision required for the parties' two autistic sons, yet no trial evidence addressed what type of substantial care and personal supervision the sons required or the cost of such care and supervision.

> (2) There is no evidence that Lola had insufficient assets to provide for the minimum reasonable needs for herself and the children.

(3)  The trial court erred in relying upon Howard's alleged fraud as a basis for a disproportionate division of the community estate because Lola's did not plead this basis and because this issue was not tried by consent.

(4)  The trial court erred in relying upon Howard's alleged fraud as a basis for a disproportionate division of the community estate because the evidence is insufficient to show that Howard committed any actual or constructive fraud.

(5)  There is no evidence to support the trial court's findings that Howard engaged in fraudulent conduct as to the 241 De Haven property, the 213 De Haven property, the payment of taxes and expenditures of funds on properties not owned by Howard, and several bank transactions.

(6)  There is no evidence to support the trial court's finding that "Howard showed no remorse or concern as he perpetuated deceitful behavior with respect to [Lola], the Willis children, and the parties' community estate in an attempt to shamelessly and fraudulently fulfill his own selfish ends[,] justifying a judgment in favor of [Lola] to equalize the estates."

(7)  There is no evidence that Howard was at fault in the break-up of the marriage.

(8)   No trial evidence shows that Howard engaged in "abusive behavior" towards Lola or the children.

Lola has been the primary caretaker of all three children for the whole of their lives.  She takes the children, two of whom suffer from autism, to receive medical care, and attends to their other needs on a regular basis.  Lola, who suffers from end-stage renal disease, has been hospitalized due to kidney and liver problems, and has been on dialysis for about two-and-a-half years.  Counting the property at 241 De Haven Street and 213 De Haven Street as community property, and including the $60,000 judgment in the calculation, the trial court awarded Lola no more than 56% of the community estate and awarded Howard at least 44% of the community estate, based on the range of values supported by sufficient trial evidence.

11

Presuming, without deciding, that each of the eight assertions listed above is correct, under the applicable standard of review, we conclude that (1) the trial court had sufficient information upon which to exercise its discretion and (2) the trial court did not abuse its discretion by dividing the community estate in a manner that is manifestly unjust and unfair, based on the nature of the community property, the relative earning capacity and business experience of the spouses, their relative financial condition and obligations, the size of the separate estates, and the health and physical condition of the parties. *See Hawkins v. Hawkins*, No. 14-05-00117-CV, 2006 WL 1675357, at *2–3 (Tex. App.—Houston [14th Dist.] June 20, 2006, no pet.) (mem. op.). We overrule Howard's second issue.

## B. Did the trial court abuse its discretion in awarding spousal maintenance?

Under his third issue, Howard challenges the trial court's order that Howard pay Lola spousal maintenance of $972 each month. The trial court awarded spousal maintenance under Family Code section 8.051. *See* Fam. Code Ann. § 8.051 (West, Westlaw through 2017 1st C.S.). The trial court relied on subsection (2)(A) and (2)(C) of this section. *See id*. Before the trial court could award spousal maintenance under either subsection, the evidence had to show that Lola would "lack sufficient property, including the [Lola's] separate property, on dissolution of the marriage to provide for the spouse's minimum reasonable needs." *Id*. Construing Howard's briefing liberally, Howard argues that the trial court erred in awarding spousal maintenance because there is no evidence that Lola would lack sufficient property on dissolution of the marriage to provide for Lola's "minimum reasonable needs."

During her trial testimony, Lola indicated that she believes she is able "to provide for herself and her children's reasonable needs for living" and that her

12

belief is based on her being able to live rent-free at her mother's house. Lola testified that, if she could not live at her mother's house, then "it's going to be a struggle." Lola did not testify that she would no longer be able to live at her mother's house, nor did Lola offer evidence as to the likelihood that she might not be able to live at her mother's house. Lola also testified that Petitioner's Exhibit 47 was a true and correct statement of her income, assets, and resources. That exhibit shows that Lola's expenses are $1,455 per month. That exhibit also shows that Lola receives $603 per month in SSI benefits for herself, $806 in SSI benefits for her two autistic sons, and child support, which, under the divorce decree, is $1,075 per month. In addition, the decree awards Lola a $60,000 judgment, payable at the rate of $1,000 per month for sixty months, as part of the division of the community estate.

Presuming, without deciding, that the child support and the children's SSI payments should not be considered in this analysis because they do not pertain to Lola's "minimum reasonable needs," we conclude that Lola's SSI benefits of $603 per month fall within the plain meaning of the undefined term "property" in section section 8.051. *See* Fam. Code Ann. § 8.051. The trial evidence does not support a finding of any amount necessary to provide for Lola's "minimum reasonable needs" that is greater than $1,455 per month. The difference between these two amounts in $852 per month.

At trial Lola's counsel stated that Lola wanted $1,000 per month for sixty months, either as spousal maintenance or as part of the division of community estate. The trial court ordered Howard to pay $1,000 per month for sixty months as part of the division of the community estate and also ordered him to pay Lola $972 per month in spousal maintenance. The $1,000 per month that the trial court ordered Howard to pay falls within the plain meaning of the undefined term

13

"property" in section 8.051. *See id.* Thus, Lola has at least $1,603 per month in property on dissolution of the marriage to provide for her "minimum reasonable needs," which do not exceed $1,455 per month.

When reviewing the legal sufficiency of the evidence, we consider the evidence in the light most favorable to the challenged finding and indulge every reasonable inference that would support it. *City of Keller v. Wilson,* 168 S.W.3d 802, 823 (Tex. 2005). We must credit favorable evidence if a reasonable factfinder could and disregard contrary evidence unless a reasonable factfinder could not. *See id.* at 827. We must determine whether the evidence at trial would enable reasonable and fair-minded people to find the facts at issue. *See id.* The factfinder is the only judge of witness credibility and the weight to give to testimony. *See id.* at 819. We conclude that the trial evidence is legally insufficient to support a finding that Lola would lack sufficient property on dissolution of the marriage to provide for her "minimum reasonable needs." *See Watson v. Watson*, 286 S.W.3d 519, 525 (Tex. App.—Fort Worth 2009, no pet.). Thus, the trial court abused its discretion in awarding Lola spousal maintenance. *See id*. We sustain the third issue.

**C.    Should this court address the fourth issue?**

Howard conditions his fourth issue on this court's overruling his second and third issues. Because we have sustained the third issue, this condition has not been fulfilled. In any event, Howard's fourth issue, in which he asserts that the trial court could not have awarded both the $60,000 judgment and spousal maintenance, has become moot upon our sustaining of the third issue. Thus, we do not address Howard's fourth issue.

14

### III. CONCLUSION

The trial court had sufficient information upon which to exercise its discretion. Because the trial court did not divide the community estate in a manner that is manifestly unjust and unfair, the trial court did not abuse its discretion. Because the evidence is legally insufficient to support a finding that Lola would lack sufficient property on dissolution of the marriage to provide for her "minimum reasonable needs," the trial court abused its discretion in making a spousal-maintenance award. Accordingly, we modify the trial court's final divorce decree to delete all awards of spousal maintenance[5], and we affirm the decree as modified.


/s/     Kem Thompson Frost
        Chief Justice


Panel consists of Chief Justice Frost and Justices Boyce and Christopher.

---

[5] This modification does not affect the $60,000 judgment in Lola's favor as part of the division of the community estate.