

# In The
# Court of Appeals
# Sixth Appellate District of Texas at Texarkana

_____

No. 06-21-00088-CV
_____

IN THE MATTER OF THE MARRIAGE OF JOSE A. MENA, JR.,
AND DALIA ZULEMA MARROQUIN FERNANDEZ AND
IN THE INTEREST OF A.G.M., A CHILD

On Appeal from the 246th District Court
Harris County, Texas
Trial Court No. 2018-36233

Before Morriss, C.J., Stevens and van Cleef, JJ.
Memorandum Opinion by Chief Justice Morriss

MEMORANDUM OPINION

After Jose A. Mena, Jr., filed a petition for divorce from his wife, Dalia Zulema Marroquin Fernandez, Fernandez filed a counterpetition accusing Mena of cruel treatment against her. Finding Fernandez's account true, the trial court concluded that Mena's cruel treatment led to the breakup of the marriage. As a result, the trial court granted the divorce and entered a disproportional division of community assets in favor of Fernandez. The trial court also appointed Mena and Fernandez joint managing conservators of their child, A.G.M., but granted Fernandez the exclusive right to determine the child's primary residence.

On appeal, Mena argues that the trial court erred by entering a disproportionate property division because the evidence failed to support its finding that Mena was guilty of cruel treatment that rendered the parties' cohabitation insupportable.[1] Mena also argues that the trial court abused its discretion by awarding Fernandez the exclusive right to designate A.G.M.'s primary residence and, as a result, the trial court should not have entered a standard possession order and required him to pay child support within the statutory guidelines. Because we find no abuse of discretion in either (1) the trial court's property division or (2) its custody determination, we affirm the trial court's judgment.

*(1)     There Was No Abuse of Discretion in the Trial Court's Property Division*

"When dividing property between two divorcing spouses, the trial court is required to 'order a division of the estate of the parties in a manner that the court deems just and right,

---

[1]Originally appealed to the Fourteenth Court of Appeals, this case was transferred to this Court by the Texas Supreme Court pursuant to its docket equalization efforts. *See* TEX. GOV'T CODE ANN. § 73.001. We follow the precedent of the Fourteenth Court of Appeals in deciding this case. *See* TEX. R. APP. P. 41.3.

having due regard for the rights of each party and any children of the marriage.'" *Willis v. Willis*, 533 S.W.3d 547, 551 (Tex. App.—Houston [14th Dist.] 2017, no pet.) (quoting Tex. Fam. Code Ann. § 7.001) (citing *Murff v. Murff*, 615 S.W.2d 696, 698 (Tex. 1981)). "On appeal, we review the trial court's division of community property for an abuse of discretion." *In re Marriage of Hultquist & Cook*, No. 14-19-00896-CV, 2021 WL 2252129, at *3 (Tex. App.—Houston [14th Dist.] June 3, 2021, no pet.) (mem. op.) (citing *Murff*, 615 S.W.2d at 698; *Quijano v. Quijano*, 347 S.W.3d 345, 349 (Tex. App.—Houston [14th Dist.] 2011, no pet.)). As a result, "[w]e will not disturb the property division on appeal unless the appellant demonstrates that the trial court clearly abused its discretion by a division or an order that is manifestly unjust and unfair." *Willis*, 533 S.W.3d at 551.

"Assessments of the legal and factual sufficiency of the evidence are not independent grounds for reversal but are relevant factors in assessing whether the trial court abused its discretion." *Hultquist & Cook*, 2021 WL 2252129, at *3 (citing *Quijano*, 347 S.W.3d at 349); *see Willis*, 533 S.W.3d at 551 ("Under this abuse-of-discretion standard, the legal sufficiency of the evidence is not an independent ground of error, but is merely a relevant factor in assessing whether the trial court abused its discretion."). In reviewing the property division, we "consider (1) whether the trial court had sufficient information on which to exercise its discretion and (2) whether the trial court abused its discretion by dividing the property in a manner that is manifestly unjust and unfair." *Willis*, 533 S.W.3d at 551. "We are to resolve every reasonable presumption in favor of a proper exercise of discretion of the trial court in dividing the parties' property." *Id.*

3

"In *Murff*, the Supreme Court of Texas identified various factors that the trial court may consider when dividing the community estate." *Id.* (citing *Murff*, 615 S.W.2d at 698–99). Relevant factors include "fault in breaking up the marriage," "the benefit the spouse not at fault would have received had the marriage continued," "the nature of the community property, the relative earning capacity and business experience of the spouses, their relative financial condition and obligations, their education, the size of the separate estates, [and] the age, health, and physical condition of the parties." *Id.* (citing *Murff*, 615 S.W.2d at 698–99). Because the trial court considers these factors in dividing community property, "[t]he division of the parties' estate need not be equal." *Hultquist & Cook*, 2021 WL 2252129, at *3 (citing *Kaley v. Kaley*, No. 14-17-00768-CV, 2019 WL 2097490, at *3 (Tex. App.—Houston [14th Dist.] May 14, 2019, no pet.) (mem. op.)).

Because Fernandez pled that this was a fault-based divorce, "the court may consider the conduct of the errant spouse in making a disproportionate distribution of the marital estate." *Id.* (citing *Kaley*, 2019 WL 2097490, at *3). "The grounds available for a fault-based divorce specifically include cruelty." *Kaley v. Kaley*, No. 14-17-00768-CV, 2019 WL 2097490, at *3 (Tex. App.—Houston [14th Dist.] May 14, 2019, no pet.) (mem. op.) (citing TEX. FAM. CODE ANN. § 6.002). "To be considered cruel treatment, the conduct of the accused spouse must rise to such a level that it renders the couple's living together insupportable." *Hultquist & Cook*, 2021 WL 2252129, at *3 (quoting *In re Marriage of Garcia*, No. 14-17-00444-CV, 2019 WL 1523483, at *7 (Tex. App.—Houston [14th Dist.] Apr. 9, 2019, no pet.) (mem. op.)). "Insupportability is defined in the Texas Family Code as a state in which the legitimate ends of

4

the marital relationship have been destroyed and where any reasonable expectation of reconciliation is prevented." *Id.* (citing TEX. FAM. CODE ANN. § 6.001).

        a.        *The Trial Court's Finding of Cruelty Was Not an Abuse of Discretion*

In its findings of fact, the trial court found that Mena was guilty of cruel treatment toward Fernandez. On appeal, Mena argues that the trial court erred by this finding. After reviewing the evidence, we disagree.

Fernandez came to the United States from Mexico on a student visa and became a United States citizen. She met Mena, a police officer, and married him in 2012. Their daughter, A.G.M., was born in 2013. According to Fernandez, Mena "committed domestic violence against [her] from the time [she] was pregnant." Fernandez said that she tried to break up with Mena in 2013, but "[h]e grabbed a gun[,] pointed it to his head[,] and he said that he was going to kill himself if [she left] with the girl." Fernandez believed Mena's threat because Mena's father had committed suicide.[2] As a result, the couple remained together.

Fernandez stayed home to care for A.G.M. because they "didn't want anybody else to take care of her and [they] wanted her to be home with" Fernandez. After A.G.M. started daycare, Fernandez took English classes but did not work. The family lived in an apartment and relied on Mena's salary as an officer with the Harris County Sheriff's Office (HCSO).

Even after she decided to remain with Mena, Fernandez testified that Mena continued to abuse her and, when upset with her, would take the keys to the car to prevent her from leaving until he was no longer upset. Photographs of multiple bruises on Fernandez's arms on one

---

[2]Mena denied threatening suicide.

occasion and bruising to her head on another were admitted into evidence.  Mena attempted to explain the bruises in the following manner:

> [The bruises] were from . . . when she tried to let the dog loose, she locked me out -- and, at the time, the puppy was untrained.  So, I kicked the door in because she locked me out to let the dog loose and I didn't know she was standing behind the door and it hit her on her arm.

Fernandez stated that she did not call the police because she knew Mena would lose his job.

Hollie Michelle Shanklin McCartney, a friend to both Mena and Fernandez, testified that she had never witnessed any conflict between them.  Yet, McCartney, a police officer whose husband also worked for the HCSO, testified that Mena and Fernandez visited her after a "disturbance" and that Fernandez, while crying, said that Mena had hit her.  According to McCartney, the HCSO was dispatched to her home and "talked to both parties[, but] there was no arrest."  After the police left, McCartney said that Fernandez stayed with her for "a couple of days."  Fernandez said that, because Mena worked as an officer with the HCSO, his coworkers would be dispatched to their disturbance calls and "would say that they were going to file a report[, but] they never did."

Fernandez testified that Mena bullied her because of his occupation.  Mena testified that he called the police on Fernandez because she would speak with ex-boyfriends and claimed he "found out they were coaching her to say that [he] hit her."  Mena said that, as a result, he "contacted the supervisor to make the scene and domestic---sergeants came out, deputies came out, domestic violence came out, and Internal Affairs came out as well to the scene.  There were over 20 deputies on the scene."  Mena testified that A.G.M. was present when the police were

6

called and that Fernandez reported that she had been assaulted by Mena, but that HCSO did not find the allegations true.

In 2018, the couple separated. Fernandez testified that Mena told her that she had to leave the apartment where they lived with A.G.M. as a family even though Fernandez did not have a job or any money at the time. She also said that Mena "took [A.G.M.] away" when they separated. According to Fernandez, Mena kept her from seeing A.G.M. after the separation and, for a period of seven or eight months, he would only allow Fernandez visits "[o]ne or two times a week if everything was fine with him." Fernandez was only allowed to see A.G.M. at Mena's apartment and was never allowed to leave with her. Fernandez said that they would occasionally have outings as a family, which would end poorly because Mena would discuss their relationship and raise his voice in front of A.G.M., causing her to "get scared and get kind of nervous."

According to Fernandez, Mena told her that she could not take A.G.M. with her during the separation because she had to wait "for everything to be resolved in court in order to have that right." Even after the divorce proceedings were filed, Fernandez said Mena was controlling when it came to her contact with A.G.M. Providing an example, Fernandez testified, and a text message chain introduced into evidence showed, that Mena became upset when Fernandez picked A.G.M. up from school on Thursday, December 20, 2018, and threatened to file a missing person report even though he knew A.G.M. was with Fernandez. Fernandez texted that she was waiting on her attorney's telephone call because her counsel said it was okay for Fernandez to pick A.G.M. up from school and that "[t]here were no restrictions on [her]." Even so, Mena wanted to know where they were going and, after Fernandez chose not to disclose their location,

7

Mena texted that he was "filling [the] report now with plates of [Fernandez's] car." Fernandez texted, "Okay," and when Mena saw that his threat had no effect, he asked, "So you're not bringing [A.G.M.] back?" Fernandez said she would return the child on the following Tuesday morning. Fernandez testified that she did not have her first moment alone with A.G.M. without interference until after she secured temporary orders from the trial court in February 2019.

The trial court's temporary orders required Mena to pay temporary spousal maintenance. Fernandez testified, and Mena admitted, that Mena violated court orders by failing to timely pay temporary spousal maintenance until a motion to enforce payment was filed. Fernandez, who had obtained full employment since the separation, paid all child support that the trial court ordered her to pay Mena, but Mena was still behind on three months of spousal support payments at the time of trial.

At trial, Mena denied being violent and said that he never physically assaulted or attempted to control Fernandez. Instead, Mena claimed that Fernandez "began to be violent by destroying property and [being] mentally abusive to [him]" and would yell in A.G.M.'s presence—conduct that Fernandez denied. Mena testified that Fernandez refused to work, which required him to work several jobs to provide her with the lifestyle she wanted. Yet, he also said Mena was taking a class to learn English "to get a degree that she wanted so she could get a job that she wanted." Mena also alleged that Fernandez threatened to remove A.G.M. to Mexico and not return, which was another allegation that Fernandez denied.

After reviewing all of the evidence, we find that "[t]he trial court, as the trier of fact, reasonably could have relied on [Fernandez's] testimony to conclude that [Mena's] conduct rose

8

to such a level that rendered the parties' living together insupportable." *Hultquist & Cook*, 2021 WL 2252129, at \*5 (citing TEX. FAM. CODE ANN. § 6.002). The trial court was free to find that Fernandez suffered domestic violence and that Mena restricted her freedom of movement when angry with her, used his occupation to bully her, kicked her out of the family apartment with no income, and unjustifiably restricted Fernandez's access to their daughter after the separation. "Although [Mena] alleged that [Fernandez] was also cruel, the trial court, as the sole judge of the credibility of the witnesses and the weight to be given their testimony, was entitled to accept [Fernandez]'s testimony and disbelieve [Mena]'s."[3] *Kaley*, 2019 WL 2097490, at \*3 (citing *Woody v. Woody*, 429 S.W.3d 792, 797 (Tex. App.—Houston [14th Dist.] 2014, no pet.)). As a result, we find no abuse of discretion in the trial court's determination that Mena was guilty of cruelty.

    b.    *No Abuse of Discretion Is Shown in the Disproportionate Property Division*

A "finding regarding cruelty . . . supports the trial court's disproportionate division of the community estate." *Hultquist & Cook*, 2021 WL 2252129, at \*5 (citing *Kaley*, 2019 WL 2097490, at \*3). In its findings, the trial court clarified that it "ordered a disproportionate division of the community estate due to fault in the breakup of the marriage on the grounds of cruel treatment, and Husband's earning capacity in comparison to Wife's earning capacity."

---

[3]Mena admitted that he did not include in his discovery responses the jobs he worked, his income, and fringe benefits and that he did not explain why his 2018 tax return reported an $11,900.00 loss of business income. He also failed to amend discovery responses to report his ownership of a vehicle. Mena testified that he applied for a position that would involve car accident investigations but did not obtain it because "it was assumed" that he had cheated on his examination. Yet, Mena claimed that the matter was internally investigated and it was found that he had not cheated but was nevertheless assigned to a new position as a traffic officer.

The party challenging the division bears the burden of demonstrating from the evidence in the record that the trial court's division was "so unjust and unfair as to constitute an abuse of discretion." *Kaley*, 2019 WL 2097490, at *3 (quoting *Tran v. Nguyen*, 480 S.W.3d 119, 132 (Tex. App.—Houston [14th Dist.] 2015, no pet.)). On this record and given the trial court's finding of cruelty and uncontested discrepancy between the parties' earning capacity, we cannot say that the trial court's property division constituted an abuse of discretion. As a result, we overrule this point of error.

*(2)     There Was No Abuse of Discretion in the Trial Court's Conservatorship Determination*

Mena also asserts that the evidence is legally and factually insufficient to support the trial court's decision that Fernandez should be given the exclusive right to determine A.G.M.'s primary residence.

"We review a trial court's decision on custody, control, possession, and visitation matters using an abuse-of-discretion standard." *Chavez v. Chavez*, No. 14-14-00481-CV, 2016 WL 1613240, at *2 (Tex. App.—Houston [14th Dist.] Apr. 21, 2016, no pet.) (mem. op.) (citing *Gillespie v. Gillespie*, 644 S.W.2d 449, 451 (Tex. 1982); *Flowers v. Fl*owers, 407 S.W.3d 452, 457 (Tex. App.—Houston [14th Dist.] 2013, no pet.)). "A trial court abuses its discretion if it acts arbitrarily, unreasonably, or without reference to any guiding rules or principles." *Id.* (citing *Flowers*, 407 S.W.3d at 457). "Under an abuse-of-discretion standard, legal and factual insufficiency are not independent grounds of error, but rather are relevant factors in assessing whether the trial court abused its discretion." *Id.* (citing *Flowers*, 407 S.W.3d at 457). "There is no abuse of discretion as long as some evidence of a substantive and probative character exists to

support the trial court's exercise of its discretion." *Id.* (citing *Flowers*, 407 S.W.3d at 457). "In determining issues of conservatorship and possession and access, the primary consideration is always the best interests of the child." *Id.* (citing TEX. FAM. CODE ANN. § 153.002; *Lenz v. Lenz*, 79 S.W.3d 10, 14 (Tex. 2002)); *see* TEX. FAM. CODE ANN. § 153.134.

The record in this case established that both parents loved A.G.M., who was eight at the time of trial. They both cared for her needs and provided her with a stable home. McCartney testified, and the evidence showed, that both Mena and Fernandez were good parents. A.G.M. was in the third grade, received "AB Honor Roll awards from her school," and engaged in extracurricular activities. Both parents wished to have the exclusive right to designate A.G.M.'s primary residence.

Fernandez was employed as an assistant teacher in the same daycare that A.G.M. used to attend, made $11.00 per hour, and leased a two-bedroom apartment that included a separate bedroom for A.G.M. Photographs of the appropriate and well-furnished apartment, as well as A.G.M.'s colorful room, were admitted into evidence. Fernandez testified that A.G.M. was "very happy" when she was with her in the apartment. Fernandez testified about, and introduced photos with A.G.M. that depicted, the many activities she did with A.G.M., such as baking, painting, swimming, biking, playing in the park, making forts, visiting family, attending school functions, and celebrating birthdays and holidays. Fernandez testified that she did homework with A.G.M. four days a week and that the child had been tardy only once when Fernandez lost her keys.

11

Since the separation, A.G.M. had lived with Mena, who had a stable job and considerably more income than Fernandez. Mena testified that the visitation schedule was working for A.G.M. and that he was very involved in A.G.M.'s life and put her needs first. Mena's home was also appropriate for A.G.M., and he also engaged A.G.M. in many activities and helped with homework. Even so, Mena admitted that A.G.M. was tardy at least ten times while in his care.[4]

When determining matters of conservatorship, the trial court is required to consider a history of domestic violence. *See* TEX. FAM. CODE ANN. § 153.004 (Supp.). Fernandez testified that it was not in A.G.M.'s best interest to live with Mena because he was violent. Although Fernandez clarified that Mena had never exhibited domestic violence towards A.G.M., she believed A.G.M. would be happier in her home because she had "seen things, things that she shouldn't have seen" in Mena's home that caused concern that "[A.G.M.] could witness the violence towards somebody else . . . that would affect her." The trial court likely also considered Mena's conduct toward Fernandez after the separation and could have found that Mena's limitations on Fernandez's access to A.G.M. was not in the child's best interests.

After reviewing the evidence, we cannot conclude that the trial court abused its discretion by awarding Fernandez the exclusive right to designate A.G.M.'s primary residence. This finding is also dispositive of Mena's complaints about the entry of the standard possession order and order to pay child support within the statutory guidelines.[5] As a result, we overrule this point of error.

---

[4]Mena accused Fernandez of "body sham[ing] [A.G.M.] and call[ing] her fat," an allegation that Fernandez flatly denied.

[5]*See* TEX. FAM. CODE ANN. § 153.312 (Supp.).

12

We affirm the trial court's judgment.

Josh R. Morriss, III
Chief Justice

Date Submitted:    August 3, 2022
Date Decided:    August 31, 2022