

# In the
# Court of Appeals
# Sixth Appellate District of Texas at Texarkana

---

No. 06-23-00001-CV

---

IN THE MATTER OF THE MARRIAGE OF
TIFFANY M. LYNCH AND SCOTT P. LYNCH
AND IN THE INTEREST OF W.C.L., E.S.L., L.M.L., J.E.L., AND D.T.L., CHILDREN

---

On Appeal from the County Court at Law
Fannin County, Texas
Trial Court No. FA-19-44473

---

Before Stevens, C.J., van Cleef and Rambin, JJ.
Memorandum Opinion by Justice van Cleef

MEMORANDUM OPINION

Scott P. Lynch appeals from the final decree of divorce from Tiffany M. Lynch. On appeal, Scott argues that the trial court abused its discretion by denying a motion to compel discovery urged on the day of trial, by allowing the testimony of a court-appointed, child-custody evaluator, and by preventing testimony via Zoom. Scott also argues that the trial court erred by failing to appoint a conservator with the exclusive right to designate the children's primary residence, by ordering an allegedly unjust division of the marital estate, and by denying his motion for new trial.

We find that (1) the trial court did not err by denying a motion to compel discovery urged on the day of trial, (2) the trial court did not abuse its discretion by admitting testimony from a child-custody evaluator, (3) Scott failed to preserve any complaint about exclusion of Zoom testimony, (4) the trial court named Tiffany as the conservator with the right to designate the primary residence of the children but omitted that finding from the judgment due to clerical error, (5) the trial court did not err by its just and right property division, and (6) the trial court did not err by denying the motion for new trial. After modifying the judgment to show that Tiffany has the right to designate the primary residence of the children, we affirm the trial court's judgment.

I.    Factual Background

Tiffany and Scott were married on September 12, 2010. They ceased to live together as husband and wife in October 2019, and the record shows that Tiffany filed for divorce the following month. Tiffany and Scott, who were both described as good parents, sought

2

conservatorship of their children, fifteen-year-old Wayland,[1] ten-year-old Edgar, six-year-old Libby, four-year-old Joy, and three-year-old Darren.[2]

The trial court issued temporary orders requiring Scott to pay the mortgage on the marital home during the pendency of the case. It also ordered that Tiffany and Scott have possession of the children on a "week on/week off basis," which allowed the children to remain in the marital home while Tiffany and Scott rotated out of the home each week.

The trial court also appointed Ellen Hutton as the child-custody evaluator. Hutton met with each parent, and her evaluation stated that Scott's beliefs "led to him buying gold and stocking up on ammo and guns as well as stockpiling non-perishable food." According to Hutton, Tiffany alleged that Scott was a daily marihuana user. Scott admitted to Hutton that he used marihuana but said he had not done so for "some time." Hutton's investigation revealed that Scott "was against modern medicine, cancer treatment, . . . and basic childhood vaccines." As a result, Hutton recommended that Tiffany "have the exclusive right to make medical and psychiatric decisions on behalf of the children." She also noted that Tiffany was "a stay-at-home-mom/work-at-home mom for the last 8 years" and that Tiffany believed that role was "what the children [were] familiar with."

Hutton also observed the children and conducted interviews with Wayland and Edgar.

As far as his relationship with Scott, Wayland said that "the two of them don't really enjoy one another's company very much," and he felt that Scott treated him differently from his

---

[1]Scott is not Wayland's biological father but adopted him.

[2]We use pseudonyms to protect the identity of the minor children. *See* TEX. R. APP. P. 9.8.

biological children. Hutton's report said that she "*became aware of a recent incident in which [Edgar] texted his mother stating: 'Ok so dad just pushed [Wayland] up against the fridge and is kind of abusing him'*" because Wayland was "*not doing the dishes right when [Scott] asked.*" Edgar stated in his interview that Scott "does save things and wants to be prepared if something happens" and that Scott was a good father.

Tiffany and Scott agreed that Scott should not have possession of and access to Wayland anymore. After conducting her evaluation, Hutton recommended that Tiffany and Scott "continue with the week on, week off schedule" of possession to the remaining children.

On September 26, 2022, the trial court signed a final decree of divorce. The order dissolved the marriage, gave Tiffany sole managing conservatorship of Wayland, and appointed Tiffany and Scott as joint managing conservators of the remaining children. The order recited that the parties had agreed that Scott should not have possession of or access to Wayland at any time but awarded Scott possession of and access to the other children on an alternating week-on/week-off basis. As Wayland's sole managing conservator, Tiffany had the exclusive right to designate Wayland's primary residence, but the order did not list which parent had the exclusive right to designate the primary residence of the remaining children. Pursuant to the decree, Tiffany and Scott were "each ORDERED to maintain a residence for the children that [was] zoned for the Leonard Independent School District until further order of the Court."

As for the property division, the trial court found that Scott failed to support his separate property claims by clear and convincing evidence. It also found that, even though its temporary orders required Scott to make mortgage payments, he "was intentionally delinquent in the

4

payment of the mortgage on the marital residence in an amount in excess of $53,000.00 at the time of trial," despite having the financial means to make the payments. Accordingly, the trial court awarded Tiffany the first $25,000.00 from the sale of the marital home as reimbursement for Scott's "non-payment of the mortgage during the divorce and to equalize the division of the estate," plus "[f]ifty-precent of the remaining [net] proceeds" from the sale of the marital home, a "2014 Ford Expedition," and Tiffany's online business, "known as ST Goods TX," among other things. Scott was awarded the remaining fifty percent of net proceeds of the sale of the property after subtracting the first $25,000.00 awarded to Tiffany, a "2013 Hyundai Sonata," a "2018 Branson 5220 CH Tractor," a "Cab [sic] Cadet riding lawn mower," and his online business, "known as TXM56," among other things.

## II. There Was No Error in the Trial Court's Finding that the Motion to Compel Urged on the Day of Trial Was Untimely

In his first point of error, Scott argues that the trial court abused its discretion by failing to compel production of some of Tiffany's financial records. We disagree.

Scott first filed a motion to compel discovery responses on October 13, 2021. In her response, Tiffany said that she replied "to each and all of the items contained in the Motion to Compel asking [Scott] to specify which documents [he] believe[d] [were] in [her] possession" so that she "could adequately respond." Tiffany's response stated that she had "provided responsive information on numerous occasions, asserted objections and provided additional explanations," and included a response "to each specific item in [Scott's] Motion to Compel,"

5

"[i]rrespective of the lack of merit of [the] motion."  As a result, the trial court did not hold a hearing and took no action on Scott's October 2021 motion.[3]

At 4:26 p.m. on Friday, February 11, 2022, just three days before trial, Scott filed an amended motion to compel.  Trial began on Monday, February 14.  On the day of trial, Scott argued,

> "[W]e have been asking for documents from [Tiffany], and periodically, some documents would come, but as recently as January 21st of 2022, we asked [Tiffany], will you please provide the additional documents regarding your Wells Fargo account from October of 2021 until the present time.  We do not have those."

After Scott requested documents from other accounts, Tiffany objected "to an argument on a Motion to Compel that was filed Friday afternoon and was not set before the Court."  The trial court informed Scott that he had enough time to handle discovery matters and that it would not "start covering that issue" on the day of trial.  Contrary to the statements made by Scott in his brief, Scott did not seek a continuance of the trial at that time.

In its findings of fact and conclusions of law, the trial court noted that it had previously continued the trial based on Scott's request, that Scott had filed the motion "three days prior to the trial," and that "[s]aid motion was not set for hearing."  As a result, the trial court found that Scott "waived any complaints of inadequate discovery by not presenting the same to the Court prior to the trial date although ample time to do so was allowed by the Court."  The court further found "that during the 28 months between the filing of the original petition and trial of this

---

[3]The record does not establish that Scott actually brought his first motion to compel to the trial court's attention.

matter, sufficient time existed for the parties to conduct discovery and seek any relief from the Court to compel discovery."[4]

"To preserve error on a discovery dispute, the appealing party must obtain a ruling by the trial court on the discovery issue." *U. Lawrence Boze' & Assoc., P.C. v. Harris Cnty. Appraisal Dist.*, 368 S.W.3d 17, 32 (Tex. App.—Houston [1st Dist.] 2011, no pet.). Accordingly, "[t]he Texas Supreme Court has held 'the failure to obtain a pretrial ruling on discovery disputes that exist before commencement of trial constitutes a waiver of any claim for sanctions based on that conduct.'" *Corona v. Pilgrim's Pride Corp.*, 245 S.W.3d 75, 84 (Tex. App.—Texarkana 2008, pet. denied) (quoting *Remington Arms Co. v. Caldwell*, 850 S.W.2d 167, 170 (Tex. 1993) (orig. proceeding)). "This is in accord with the general rule that, as a prerequisite to a complaint for appellate review, the record must show that the trial court, either expressly or implicitly, ruled on the motion." *Id.* (citing TEX. R. APP. P. 33.1(a)(2)(A)).

Here, the record shows that Scott failed to bring any motion to compel to the trial court's attention until the day of trial. After the trial court made clear that it found Scott's motion untimely, Scott failed to ask for a continuance. Simply put, Scott "waived any objections to these matters by failing to request a pretrial hearing on the alleged discovery abuse and by requesting a[nother] preferential trial setting." *Remington Arms Co. v. Caldwell*, 850 S.W.2d 167, 170 (Tex. 1993) (orig. proceeding); *see Peters v. Volkswagen Grp. of Am., Inc.*, No. 01-21-00634-CV, 2023 WL 5436383, at *4 (Tex. App.—Houston [1st Dist.] Aug. 24, 2023, pet. filed) (mem. op.) ("determining that the trial court never ruled on the discovery motion, we hold that

_____

[4]At trial, Tiffany said that she had produced all the information requested during discovery.

[movant] has failed to preserve [his] complaint regarding the discovery dispute for our review"); *Corona*, 245 S.W.3d at 84; *Burgess v. Feghhi*, No. 12-04-00367-CV, 2007 WL 2178544, at *6 (Tex. App.—Tyler July 31, 2007, pet. denied) (mem. op.) (finding that motion to compel movant waived complaints by failing to request a hearing and that, as a result, the trial court did not have an opportunity to rule on whether objections to discovery requests were valid).

After reviewing the record, we find proper the trial court's ruling that Scott waived his motion to compel, which was not timely heard prior to trial. We overrule Scott's first point of error.

## III. The Trial Court Did Not Abuse its Discretion by Allowing Testimony from the Child-Custody Evaluator

In his second point of error, Scott argues that the trial court abused its discretion by admitting Hutton's testimony because it did not comply with the requirements of Section 107.109 of the Texas Family Code.[5] "We review a trial court's decision" to allow Hutton's testimony "for an abuse of discretion." *Fleming v. Wilson*, 610 S.W.3d 18, 21 (Tex. 2020) (per curiam). "A trial court abuses its discretion when it acts 'without reference to any guiding rules or principles; or in other words, [when it acts] arbitrarily or unreasonably.'" *In re J.J.R.S.*, 627

---

[5]The trial said that it would "take this under advisement" and expressly stated that it was not going to rule on the matter at that time. After trial, the court issued the following written finding:

> The Court finds that Ellen Hutton, a person duly qualified under the Texas Family Code to conduct custody evaluations, was appointed by the Court to perform a custody evaluation in conformity with the provisions of Chapter 107 of the Texas Family Code. The Court further finds and concludes that Ellen Hutton is qualified to give expert testimony on the subject matter to which she was asked to testify. Ellen Hutton testified at trial that she in fact conducted the child custody evaluation and testified to the results of her evaluation. The Court found Ms. Hutton and her report to be unbiased, thorough, in compliance with all conditions of the Texas Family Code regarding child custody evaluations, and credible.

As a result, we will discuss the testimony at trial which could have impacted the trial court's decision.

S.W.3d 211, 218 (Tex. 2021) (alteration in original) (quoting *Worford v. Stamper*, 801 S.W.2d 108, 109 (Tex. 1990) (per curiam)).

Scott's complaint is governed by Section 107.109 of the Texas Family Code, which states, in relevant part,

> (a)  A child custody evaluator may not offer an opinion regarding conservatorship of a child who is the subject of a suit or [sic] possession of or access to the child unless each basic element of a child custody evaluation as specified in this section and each additional element ordered by the court, if any, has been completed, unless the failure to complete an element is satisfactorily explained as provided by Subsection (b).
>
> (b)  A child custody evaluator shall:
>
>> (1)  identify in the report required by Section 107.113 any basic element or any additional element of a child custody evaluation described by this section that was not completed;
>>
>> (2)  explain the reasons the element was not completed; and
>>
>> (3)  include an explanation of the likely effect of the missing element on the confidence the child custody evaluator has in the evaluator's expert opinion.
>
> (c)  The basic elements of a child custody evaluation under this subchapter consist of:
>
>> (1)  a personal interview of each party to the suit seeking conservatorship of, possession of, or access to the child;
>>
>> (2)  interviews, conducted in a developmentally appropriate manner, of each child who is the subject of the suit who is at least four years of age during a period of possession of each party to the suit but outside the presence of the party;
>>
>> (3)  observation of each child who is the subject of the suit, regardless of the age of the child, in the presence of each party to the suit, including, as appropriate, during supervised visitation, unless contact between a party and a child is prohibited by court order or the person conducting the

9

evaluation has good cause for not conducting the observation and states the good cause in writing provided to the parties to the suit before the completion of the evaluation;

(4) an observation and, if the child is at least four years of age, an interview of any child who is not a subject of the suit who lives on a full-time basis in a residence that is the subject of the evaluation, including with other children or parties who are subjects of the evaluation, where appropriate;

(5) the obtaining of information from relevant collateral sources, including the review of:

(A) relevant school records;

(B) relevant physical and mental health records of each party to the suit and each child who is the subject of the suit;

(C) relevant records of the department obtained under Section 107.111;

(D) criminal history information relating to each child who is the subject of the suit, each party to the suit, and each person who lives with a party to the suit; and

(E) notwithstanding other law, records or information from any other collateral source that may have relevant information;

(6) for each individual residing in a residence subject to the child custody evaluation, consideration of any criminal history information and any contact with the department or a law enforcement agency regarding abuse or neglect; and

(7) assessment of the relationship between each child who is the subject of the suit and each party seeking possession of or access to the child.

TEX. FAM. CODE ANN. § 107.109.

Scott argues that Hutton failed to interview all the children and failed to obtain school records, physical and mental health records, criminal background checks, and other collateral

10

information. After examining each argument, we find that the trial court did not abuse its discretion by concluding that Hutton complied with Section 107.109.

As for Scott's argument that Hutton did not interview all the children, Hutton was only required to interview the children who were at least four years of age. At the time of her interviews, Hutton testified that she met with Wayland, Edgar, and Libby, but did not meet with Joy and Darren because they were under four years old at the time.[6] Hutton said, and her report reflected, that Libby, who was six, "expressed no desire to meet with [her] despite being present with her mother and father for interviews." Because Libby would not speak with Hutton, the trial court could have found that forcing her to interview was not developmentally appropriate.

Next, Scott argues that Hutton failed to obtain school records. Section 107.109(c)(5)(A) only requires the gathering of relevant school records. TEX. FAM. CODE ANN. § 107.109(c)(5)(A). As for the children that were attending school, Hutton's report noted that they had no learning or behavior problems. Since "[n]either parent reported any issues" with the children in school, Hutton testified that school records were irrelevant to her evaluation.[7] As a result, the trial court could have concluded that the school records were not relevant to the issue of conservatorship.

---

[6]Scott acknowledges that Joy was three years old at the time of Hutton's interviews but argues that Hutton should have conducted an interview after Joy turned four, which occurred before the report was written. Even assuming that Hutton was required to attempt another interview, Hutton's report stated that Joy "*was observed to be apprehensive or shy at her home visit and it was determined that meeting with her would not be necessary*." As a result, the trial court could have determined that Hutton complied with Section 107.109(b).

[7]Although cross-examination showed that Hutton knew Edgar had excessive absences from school, nothing showed that the absences, which Tiffany said "primarily occurred on Scott's week [of possession]," were the result of any parental fault. Also, the evidence showed that Edgar successfully made up his absences by attending summer school.

Next, Scott argues that Hutton failed to obtain physical and mental health records, which are only required if relevant, and criminal records. *See* TEX. FAM. CODE ANN. § 107.109(c)(5)(B), (D). Tiffany testified that there were no substantial medical issues with any of the children and that medical records would not produce relevant information. Tiffany testified that neither she, Scott, nor the children had any criminal history. Hutton also testified that she did not gather medical or psychological records since Scott and Tiffany had no medical or psychological concerns.[8] Hutton's report stated that neither Scott nor Tiffany was listed in the Texas Child Abuse/Neglect Central Registry. When asked about Scott's and Tiffany's counseling records, Hutton said she did not obtain them because she spoke with each parent about their concerns and believed she did her "due diligence." Based on the record establishing that Tiffany and Scott were both good parents, the trial court could have determined that physical and mental health records were not relevant to the determination of conservatorship and that no criminal records existed.

Next, Scott argues that Hutton failed to obtain other relevant collateral information, but he admits that he and Tiffany "gave the evaluator multiple collateral sources who provided character reference letters." As a result, Scott's argument that Hutton did not obtain this information is meritless. Instead, Scott's complaint relates to the thoroughness of Hutton's follow-up with persons who provided character reference letters, which was proper fodder for cross-examination instead of grounds for rendering Hutton's report inadmissible. This is because "a party's complaints that an . . . expert's testimony did not consider all the relevant

---

[8]Although Edgar sought medical treatment for sleepwalking and urinating, the trial court could have found that this matter was not relevant to the issue of conservatorship.

12

facts 'go to its weight, not its admissibility.'" *See Starwood Mgmt., LLC by & through Gonzalez v. Swaim*, 530 S.W.3d 673, 681 (Tex. 2017) (per curiam) (quoting *Ford Motor Co. v. Ledesma*, 242 S.W.3d 32, 40–41 (Tex. 2007)).

After reviewing Scott's arguments and the appellate record, we find that the trial court did not abuse its discretion by admitting Hutton's testimony. We overrule Scott's second point of error.

## IV. Scott Did Not Preserve Error About the Exclusion of Testimony via Zoom

At the conclusion of the first day of trial, Scott asked whether two unnamed witnesses could testify by Zoom on the second day of trial. Scott clarified that one of his witnesses was in Kansas City and the other was in Louisiana, but the trial court did not allow testimony by Zoom. Scott failed to name the witnesses he sought to introduce and did not explain the substance of their testimony or why the witnesses were necessary to his case.[9] Even so, Scott's brief contains the names of the witnesses he wanted to call via Zoom and explains the substance of their testimony. We find that Scott failed to preserve his complaint for our review.

"To preserve error concerning the exclusion of evidence, the complaining party must actually offer the evidence and secure an adverse ruling from the court." *In re R.N.*, 356 S.W.3d 568, 572 (Tex. App.—Texarkana 2011, no pet.) (quoting *Lister v. Walters*, 247 S.W.3d 381, 383 n.1 (Tex. App.—Texarkana 2008, no pet.)). An offer of proof is required to preserve error. *Id.*; *see Culver v. Culver*, 360 S.W.3d 526, 531 n.9 (Tex. App.—Texarkana 2011, no pet.) ("To challenge the exclusion of evidence, a party must: (1) attempt to introduce the evidence; (2) if an

---

[9]Also, the clerk's record does not contain Scott's designation of witnesses at trial or subpoenas of the witnesses he wished to call by Zoom.

objection is made, specify the purpose for which the evidence is offered and give the trial court reasons why the evidence is admissible; (3) obtain a ruling from the court; and (4) if the court rules the evidence inadmissible, make a record, either through an informal offer of proof or a formal bill of exceptions, of the evidence the party desires admitted.").

In its findings of fact and conclusions of law, the trial court found "that no bills of exception . . . nor . . . offer of proof . . . [was] made in regard to any alleged excluded testimony or evidence." Since Scott did not make an offer of proof or file a formal bill of exceptions specifying the substance of his witnesses' testimony, nothing enables us to determine whether the testimony would have been admissible. Therefore, any error in the trial court's ruling has not been preserved for our review. *See Culver*, 360 S.W.3d at 531 n.9. As a result, we overrule Scott's third point of error.

## V.     The Trial Court Gave Tiffany the Right to Designate the Primary Residence

### A.     We Must Modify the Judgment to Reflect that Tiffany Had the Right to Designate the Primary Residence

Next, Scott acknowledges that the trial court's findings of fact show that it gave Tiffany the right to determine the primary residence of Edgar, Libby, Joy, and Darren. Even so, Scott argues that the trial court erred by failing to include that finding in its final decree. Because the record shows that the trial court made a clerical error by omitting this information, we modify the trial court's judgment.

"When an appellate court is presented with a conflict between a judgment and subsequent findings and conclusions, the appellate court has the power to modify the judgment to conform with the findings of fact and conclusions of law." *In re Marriage of Edwards*, 79 S.W.3d 88,

14

101 (Tex. App.—Texarkana 2002, no pet.).   Scott is correct in noting that the trial court's judgment did not state which parent had the right to designate the children's primary residence. However, the findings of fact issued after the judgment stated, "It is in the best interest of the children, . . . that TIFFANY M. LYNCH have the right to designate the primary residence of [Edgar, Libby, Joy, and Darren]."   As discussed below, the record supported the trial court's decision.   As a result, we modify the trial court's judgment to reflect that Tiffany had the exclusive right to designate the primary residence of Edgar, Libby, Joy, and Darren.

**B.      The Trial Court Did Not Abuse its Discretion by Denying Scott's Request to Establish the Primary Residence**

Scott argues that the trial court erred by failing to give him the exclusive right to determine the primary residence of Edgar, Libby, Joy, and Darren.  We disagree.

"An appellate court reviews a trial court's order regarding conservatorship under an abuse of discretion standard."   *In re Marriage of Christensen*, 570 S.W.3d 933, 937 (Tex. App.—Texarkana 2019, no pet.) (citing *Gillespie v. Gillespie*, 644 S.W.2d 449, 451 (Tex. 1982)).  "A trial court abuses its discretion when it acts arbitrarily and unreasonably or without reference to any guiding principles."   *Id.* (citing *Downer v. Aquamarine Operators, Inc.*, 701 S.W.2d 238, 241–42 (Tex. 1985)).   "However, '[i]n family law cases, the abuse of discretion standard of review overlaps with traditional standards of review.'"   *Id.* (alteration in original) (quoting *In re C.G.L.*, No. 06-13-00068-CV, 2014 WL 887778, at *3 (Tex. App.—Texarkana Mar. 6, 2014, no pet.) (mem. op.)).   "Thus, 'legal and factual insufficiency are not independent grounds of reversible error, but instead are factors relevant to our assessment of whether the trial court abused its discretion.'"   *Id.* (quoting *In re C.G.L.*, 2014 WL 887778, at *3).

15

"Of course, in making our evaluation, we recognize that '[t]he trial court is in the best position to observe the demeanor and personalities of the witnesses and can "feel" the forces, powers, and influences that cannot be discerned by merely reading the record.'" *Id.* (alteration in original) (quoting *Bates v. Tesar*, 81 S.W.3d 411, 424 (Tex. App.—El Paso 2002, no pet.)). "Moreover, a trial court does not abuse its discretion if there is some evidence of a probative and substantive character to support its decision." *Id.* (citing *Bates*, 81 S.W.3d at 424–25). "Accordingly, we consider whether the trial court had sufficient evidence upon which to exercise its discretion and whether it erred in exercising that discretion." *Id.* at 937–38.

Scott argues that, while in Tiffany's care, one of the younger children had found a knife, a child had stepped on a sharp object, a child had fallen from a highchair, and Joy and Darren had diaper rash.[10] Scott also said he had found a moldy cup and a dirty diaper neglected by Tiffany. Even so, there was testimony establishing, and the trial court found, that both parents were good parents. The evidence also showed that Tiffany had been a stay-at-home mother to the children for eight years, that she had plans to live in a home on her parent's land with the children while the marital home was being sold, and that Scott had not yet acquired a residence.[11]

---

[10]The trial court noted that "all children get diaper rash." The court continued,

> I just don't understand how those are something - - stepping on a sharp object. My goodness gracious. Falling out of a highchair. I think everybody's gone through that. To try to sit here and say somebody is not being a good mother or dad because they let those things happen, that's just not right. And I hope you have gotten that out of your system and we can go on down the road. Because I evaluate both of you this way: You're both very intelligent. You're both very caring parents.

[11]Moreover, the trial court heard evidence that Edgar had witnessed a physical altercation between Scott and Wayland. When determining matters of conservatorship, the trial court is required to consider a history of domestic violence. *See* TEX. FAM. CODE ANN. § 153.004 (Supp.).

16

"[T]he best interest of the child shall always be the primary consideration of the court in determining the issues of conservatorship and possession of and access to the child." *Id.* at 938 (quoting TEX. FAM. CODE ANN. § 153.002). "The trial court has wide latitude in determining what is in the best interest of the child." *Id.* (citing *Gillespie*, 644 S.W.2d at 451). In light of the evidence, and because Scott had not yet established a residence, we cannot say that the trial court abused its discretion by awarding Tiffany the right to determine the primary residence of Edgar, Libby, Joy, and Darren. We overrule Scott's fourth point of error.

## VI.     The Trial Court Did Not Err by its Just and Right Division of the Marital Estate

In his fifth point of error, Scott challenges the trial court's property division. "The Texas Family Code requires the trial court to divide a marital estate in a 'just and right' manner, considering the rights of the parties." *In re Marriage of Thomas*, No. 06-22-00048-CV, 2023 WL 1987947, at *1 (Tex. App.—Texarkana Feb. 14, 2023, no pet.) (mem. op.) (quoting *Scott v. Scott*, 805 S.W.2d 835, 841 (Tex. App.—Waco 1991, writ denied) (citing TEX. FAM. CODE ANN. § 7.001; *In re Marriage of Moncey*, 404 S.W.3d 701, 706 (Tex. App.—Texarkana 2013, no pet.))). "Trial courts can only divide community property, and the phrase 'estate of the parties' encompasses the community property of a marriage." *Id.* (quoting *Pearson v. Fillingim*, 332 S.W.3d 361, 363 (Tex. 2011) (per curiam)). "We review the trial court's division of [community] property under an abuse[-]of[-]discretion standard." *Id.* (alterations in original) (quoting *In re Marriage of Price*, No. 10-14-00260-CV, 2015 WL 6119457, at *3 (Tex. App.— Waco Oct. 15, 2015, no pet.) (mem. op.) (citing *Murff v. Murff*, 615 S.W.2d 696, 698 (Tex. 1981))).

17

Scott does not complain that the trial court mischaracterized any of his separate property as community property. Instead, he complains that, based on his calculations, he received a disproportionate share of community assets. Scott's argument is based on the following chart, included in his brief:

| Description | [Tiffany] | [Scott] |
|---|---|---|
| Marital home (estimated net proceeds) | $70,000 | $70,000 |
| Her business | $23,000 | |
| His business | | $4,000 |
| Ford Expedition and related debt | -$4,027 | |
| Hyundai | | $5,889 |
| Branson tractor and related debt | | $2,475 |
| Credit Card Debt | -$12,874.13 | -$11,564.98 |
| Attorney's fees | -$64,466.26 | -$53,250 |
| Payment to [Tiffany] | $25,000 | -$25,000 |
| **Total** | **$101,099** | **$45,799** |

(Footnotes omitted). Aside from mathematical error, Scott's chart fails to account for the evidence admitted at trial, including that Scott was employed by Fannie Mae as an appraisal evaluator and made approximately $100,000.00 per year.[12] Also, the record shows that Scott had used some community property to purchase gold and silver bars, which were awarded to him, in addition to over $15,000.00 worth of guns and ammunition.

Further, even assuming that Tiffany received a disproportionate share of community assets, Scott cannot show an abuse of discretion. "In reviewing the property division, we 'consider (1) whether the trial court had sufficient information upon which to exercise its discretion and (2) whether the trial court abused its discretion by dividing the property in a

---

[12]Scott's income was community property. *See* TEX. FAM. CODE ANN. §§ 3.001, 3.003.

18

manner that is manifestly unjust and unfair.'" *In re Marriage of Mena & Fernandez*, No. 06-21-00088-CV, 2022 WL 3907926, at *1 (Tex. App.—Texarkana Aug. 31, 2022, no pet.) (mem. op.) (quoting *Willis v. Willis*, 533 S.W.3d 547, 551 (Tex. App.—Houston [14th Dist.] 2017, no pet.)).

"[T]he Supreme Court of Texas identified various factors that the trial court may consider when dividing the community estate." *Id.* at *2 (quoting *Willis*, 533 S.W.3d at 551) (citing *Murff*, 615 S.W.2d at 698–99). Among these factors are "the relative earning capacity and business experience of the spouses, their relative financial condition and obligations, their education, [and] the size of the separate estates." *Id.* (quoting *Willis*, 533 S.W.3d at 551) (citing *Murff*, 615 S.W.2d at 698–99). "Because the trial court considers these factors in dividing community property, '[t]he division of the parties' estate need not be equal.'"[13] *Id.* (alteration in original) (quoting *In re Marriage of Hultquist & Cook*, No. 14-19-00896-CV, 2021 WL 2252129, at *3 (Tex. App.—Houston [14th Dist.] June 3, 2021, no pet.) (mem. op.) (citing *Kaley v. Kaley*, No. 14-17-00768-CV, 2019 WL 2097490, at *3 (Tex. App.—Houston [14th Dist.] May 14, 2019, no pet.) (mem. op.))).[14]

---

[13]The trial court's findings of fact said that it awarded Tiffany the first $25,000.00 from the sale of the home "to equalize the division of the [community] estate."

[14]Scott also states that he is entitled to reimbursement because he used separate property to improve the marital home. "When improvements are made during the marriage, there is a presumption that the funds expended on such improvements came from community property funds." *In re Marriage of Edwards*, No. 06-12-00016-CV, 2012 WL 4503413, at *3 (Tex. App.—Texarkana Oct. 2, 2012, no pet.) (mem. op.) (citing TEX. FAM. CODE ANN. § 3.003(b)). In denying Scott's claim, the trial court impliedly found that Scott could not trace the expenditures used in improving the home to his separate property by clear and convincing evidence. Further, Scott was required to prove that unjust enrichment of the community estate would occur if his separate estate were not reimbursed, but the trial court did not make such a finding. *See* TEX. FAM. CODE. ANN. § 3.402(b)(3), (e) (Supp.). Moreover, the proper measure of reimbursement is the value of the enhancement to the benefitted estate, but Scott's brief focuses on cost of the improvement and fails to point to any evidence showing the value of enhancement. *See* TEX. FAM. CODE. ANN. § 3.402(d) (Supp.).

Scott argues that "[t]he parties do not have vastly different earning capacities." We disagree. While Tiffany had a high school diploma and stopped working outside of the home after the first year of marriage, Scott had graduated from the University of Texas and worked as a licensed real estate appraisal evaluator. In addition to his $100,000.00 salary, Scott had an online business like the one operated by Tiffany. Scott testified that Tiffany had no assets prior to the marriage, but that he had a home and $10,000.00. Scott also inherited approximately $200,000.00 from his mother. As a result, the trial court could have decided that there was considerable disparity in the size of the parties' separate estates and in their education and earning capacity.

After reviewing the record, we decline to disturb the trial court's property division because Scott has not shown that the trial court "clearly abused its discretion by a division that [was] manifestly unjust and unfair." *In re Marriage of Moncey*, 404 S.W.3d at 706 (quoting *In re Marriage of Robbins*, No. 06-10-00019-CV, 2010 WL 3168402, at *2 (Tex. App.—Texarkana Aug. 12, 2010, no pet.) (mem. op.)). We overrule Scott's fifth point of error.

## VII. The Trial Court Did Not Err by Denying the Motion for New Trial

In his last point of error, Scott argues that the trial court erred by failing to grant a new trial based on the alleged discovery of new evidence. "We review a trial court's denial of a motion for new trial under an abuse of discretion standard." *Storck v. Tres Lagos Prop. Owners Ass'n, Inc.*, 442 S.W.3d 730, 741 (Tex. App.—Texarkana 2014, pet. denied) (citing *In re R.R.*, 209 S.W.3d 112, 114 (Tex. 2006) (per curiam)). "Under this standard, we may not overrule the trial court's decision unless the trial court acted unreasonably or in an arbitrary manner, without

20

reference to guiding rules or principles." *Id.* at 741–42 (quoting *El Dorado Motors, Inc. v. Koch*, 168 S.W.3d 360, 368 (Tex. App.—Dallas 2005, no pet.) (citing *Beaumont Bank, N.A. v. Buller*, 806 S.W.2d 223, 226 (Tex. 1991))). "In our review, we indulge every reasonable presumption in favor of the trial court's refusal of a new trial." *Id.*

The evidence at trial showed that both Tiffany and Scott had online resale businesses and that both purchased and resold sneakers. Scott's motion for new trial stated,

> On or about April 1, 2022[,] Scott P. Lynch discovered that [Tiffany] had been stealing from an area he had locked with his personal belongings at the marital residence, including inventory for his eBay shoe business. [Scott] found conclusive evidence that [Tiffany] had been stealing from his eBay inventory that was locked up and secured at the marital residence. While it is unknown how [Tiffany] gained access to this locked area, it is noted that she also gained access to a closet that [Scott] had locked up and secured based on exhibits she produced. It is estimated that [Tiffany] stole approximately 74 pairs of shoes and that she has either sold and/or listed said shoes in her eBay store, STGoodsTX. The estimated retail value of this merchandise . . . is $9,407.

Scott also complained that Tiffany had sold the children's Disney movies, which were once inside of the marital home and belonged to the community.

The trial court granted a hearing on Scott's motion for new trial. Scott did not testify at the hearing. Instead, Scott argued about the missing shoes, admitted his list of shoes that he claimed were stolen, and showed photos of shoes sold on Tiffany's website. Tiffany responded that Scott had no proof that she had taken any of Scott's property. After hearing argument, the trial court stated, "I don't find any of the arguments to really fall in the nature of credible newly discovered evidence that would require a new trial."

Given that Tiffany and Scott both had a resale business, we defer to the trial court's implied finding that there was no evidence that Tiffany had taken Scott's shoes instead of selling

21

the shoes she had purchased. As for the Disney movies, Scott introduced evidence showing that he had purchased them from Tiffany, but the trial court had already awarded Tiffany all collectible and personal effects in her possession, and nothing showed that the Disney movies were not in her possession. As a result, we find no abuse of discretion in the trial court's decision to deny the motion for new trial.

We overrule Scott's last point of error.

## VIII. Conclusion

We modify the trial court's judgment to reflect that Tiffany has the exclusive right to designate the primary residence of Edgar, Libby, Joy, and Darren. As modified, we affirm the trial court's judgment.


Charles van Cleef
Justice

Date Submitted:     November 30, 2023
Date Decided:       December 20, 2023